## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ENERGY AND WILDLIFE ACTION COALITION, | |
| Plaintiff, | |
| v. | Case No:  1:15-cv-1486 |
| U.S. DEPARTMENT OF THE INTERIOR; SALLY JEWELL, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE DEPARTMENT OF THE INTERIOR; U.S. FISH AND WILDLIFE SERVICE; AND DANIEL M. ASHE, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE U.S. FISH AND WILDLIFE SERVICE, | |
| Defendants. | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

1.      Plaintiff, the Energy and Wildlife Action Coalition ("EWAC" or "plaintiff"), brings this suit under the Administrative Procedure Act ("APA") to invalidate and enjoin portions of the U.S. Fish and Wildlife Service's ("Service") 2009 final rule establishing a permitting program under the Bald and Golden Eagle Protection Act ("BGEPA"), as the Defendants exceeded their authority, acted in an arbitrary and capricious manner, and otherwise abused their discretion when they promulgated those portions of the 2009 final rule.

2.      BGEPA establishes protections for Bald and Golden Eagles and imposes civil and criminal penalties for unpermitted "take" of Bald or Golden Eagles.  "Take" as defined under BGEPA "includes also pursue, shoot, shoot at, poison, wound, kill, capture, trap, collect, molest or disturb."  16 U.S.C. § 668c.  "Take" of Bald or Golden Eagles is permitted under BGEPA in

various circumstances, including "[w]henever, after investigation, the Secretary of the Interior shall determine that it is compatible with the preservation of the bald or golden eagle to permit the taking, possession, and transportation of specimens thereof . . . , or that it is necessary to permit the taking of such eagles for the protection of wildlife or of agricultural or other interests in any particular locality . . . ." 16 U.S.C. § 668a.  While Congress delegated to the Secretary of the Interior the authority to establish regulations permitting "take" of Bald and Golden Eagles, that authority is constrained by the language in 16 U.S.C. § 668a.

3.      On June 5, 2007, the Service published a proposed rule to establish a "take" permitting program under BGEPA in anticipation of the removal of the Bald Eagle from the list of threatened and endangered species under the Endangered Species Act.  72 Fed. Reg. 31,141 (Jun. 5, 2007).

4.      On September 11, 2009, the Service published a final rule ("2009 Final Rule") in the Federal Register establishing a permitting system for the take of Bald and Golden Eagles.  74 Fed. Reg. 46,836 (Sept. 11, 2009) (codified at 50 C.F.R. pt. 22).  In excess of its statutory authority, and in violation of the canons of statutory construction, through the 2009 Final Rule the Service improperly imposes the following standards for non-purposeful take permits relating to the protection of wildlife or agriculture or other interests in any particular locality (i) that any take not interfere with the preservation of Bald and Golden Eagles ("Preservation Standard") and (ii) that the permitted activity be "otherwise lawful."  As a result, the Service has imposed significant restrictions and costs on the construction and use of critical electrical generation and delivery infrastructure, and failed to comply with the rulemaking requirements of the APA.

## JURISDICTION

5.      This action arises under the Administrative Procedure Act, 5 U.S.C. §§ 551, *et seq.*  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

6.      This Court may grant the relief requested under the APA, 5 U.S.C. §§ 701-706, and 28 U.S.C. §§ 2201 and 2202 (declaratory and injunctive relief).

7.      Although notice is not required to be provided to the Service prior to initiating a lawsuit under either BGEPA or the APA, EWAC conducted outreach to make the Service aware of the problem and later provided the Service with a courtesy notice of its intent to sue and met with members of the Service prior to the filing of this action.  Because the Service has not remedied the alleged violations, an actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201.

## VENUE

8.      The United States District Court for the District of Columbia is the proper venue for this action pursuant to 28 U.S.C. § 1391(e)(1).  A substantial part of the events giving rise to the present claims occurred in this district.

## PARTIES

9.      Plaintiff EWAC is an unincorporated organization headquartered in Washington D.C.  EWAC is comprised of trade associations, electric utilities, electric transmission providers, and renewable energy companies.  EWAC has members with operations all over the United States.  EWAC's fundamental goal is to evaluate, develop, and promote sound environmental policies for federally protected wildlife and closely related natural resources while ensuring the continued generation and transmission of reliable and affordable electricity.  EWAC supports

public policies, based on sound science, that protect wildlife and natural resources in a reasonable, consistent, and cost-effective manner.

10.     EWAC's members own, maintain, and utilize electric generation and transmission equipment that either has the potential to cause "take" or is vulnerable to allegations of "take" of Bald and Golden Eagles under BGEPA.  As such, EWAC members are directly impacted by BGEPA and any final rule relating to BGEPA's take prohibition, including the 2009 Final Rule. For example, as a result of the onerous and inappropriate standards introduced by the 2009 Final Rule for non-purposeful take permits, the development and operation of electric generation and transmission facilities have been delayed, costs have increased, and members have been subject to actual and threatened enforcement actions.  Some members have also invested in testing detection and deterrent systems, have employed full time biologists to monitor their operations and nearby nests, and have been forced to suspend their operations when an observer determines that there appears to be an increased possibility of an eagle strike that could result in "take."

11.     EWAC assists its members by:  (i) participating in the public process for developing guidance, policies and regulations or interpretation of existing regulations and statutes to ensure consistency with the law, including BGEPA; (ii) conducting focused research, legal and scientific, on federal wildlife laws and regulations, including BGEPA; (iii) developing educational materials, holding discussions and conference calls on federal wildlife laws and regulations, including BGEPA; and (iv) providing information and legal advice on how to comply with federal wildlife laws and regulations, including BGEPA.

12.     BGEPA imposes the Preservation Standard requirement only when permitting the taking for "scientific or exhibition purposes of public museums, scientific societies, and zoological parks, or for the religious purposes of Indian tribes."  16 U.S.C. § 668a.  However, the

9426922

2009 Final Rule improperly grafts the Preservation Standard requirement onto non-purposeful take permits for activities related to the protection of wildlife or of agricultural or other interests in any particular locality.  In addition to the onerous and inappropriate imposition of the Preservation Standard requirement, the Service's 2009 Final Rule created a new requirement that any permitted activities be "otherwise lawful."  Although there is nothing in BGEPA's plain language requiring compliance with other laws, the 2009 Final Rule explicitly requires a non-purposeful take permit applicant's activities to be in compliance with all other laws.  Due to the Service's wholesale creation of obligations neither authorized nor contemplated by BGEPA, and its imposition of improper requirements, EWAC has been unable to effectively advise its members on how to properly comply with the 2009 Final Rule and the extent of information that needs to be included in a non-purposeful take permit application under the 2009 Final Rule. EWAC has expended significant resources in an attempt to clarify the 2009 Final Rule so that it may properly advise and assist its members.

13.     EWAC members depend on consistency and clarity in the applicable laws to put them sufficiently on notice of what their duties are and what is required in an application for any permit, including particularly a non-purposeful take permit, and when such a permit may be denied.  The 2009 Final Rule fails to provide EWAC and its members with reasonable notice of the grounds on which a non-purposeful take permit may be denied.  Because the 2009 Final Rule directly impacts and regulates EWAC members, and because EWAC is unable to effectively advise its members about how to comply with the 2009 Final Rule due to its statutory incongruities, EWAC and its individual members have been and will continue to be harmed by the Service's promulgation of the 2009 Final Rule.  The injuries alleged herein are a direct result of the Service's promulgation of the 2009 Final Rule, and the relief sought – an order declaring

9426922

invalid the Preservation Standard and the "otherwise lawful" requirement for non-purposeful take under the 2009 Final Rule, enjoining enforcement of those unlawful provisions, and remanding those portions of the 2009 Final Rule to the Service for further action consistent with BGEPA's statutory grant of authority – would redress these injuries.

14.    EWAC members include power generation companies that heavily invest in renewable energy sources, including wind power, solar power, biomass power generation, and thermal energy.  EWAC members also include electric utilities and transmission companies that rely on transmission and distribution facilities to deliver electricity.  EWAC members both face potential liability for "take" of Bald and Golden Eagles under BGEPA and may be required to secure non-purposeful take permits for continued operation of existing facilities and construction and operation of new facilities under BGEPA and its implementing regulations.  For example, operation of wind turbines has the potential to result in liability under BGEPA if a collision occurs.  Electrical transmission and distribution equipment and facilities are also subject to enforcement actions when an eagle collision occurs, and transmission owners have been granted only a handful of take permits in very limited circumstances.  EWAC members interested in reducing collision risk have been denied eagle nest removal permits.  Because certain specific facilities operated by EWAC members have the capacity to cause take of Bald and Golden Eagles, those EWAC members are compelled to seek non-purposeful take permits under the 2009 Final Rule or else risk legal violations and the attendant potential for enforcement actions by the Service resulting in significant civil and/or criminal penalties.

15.    Because the 2009 Final Rule imposes onerous and inappropriate requirements on permit applicants – e.g., the Preservation Standard and "otherwise lawful" requirement – the time required to acquire and the difficulties and costs associated with seeking a non-purposeful take

9426922

permit are significant.  While some EWAC members have initiated the permit process, and as a result incurred substantial delays and costs (few non-purposeful take permits have been issued in the half decade since the institution of the permitting regime in 2009), other EWAC members have been forced to forego the permit process and risk enforcement actions.

16.     Since the promulgation of the 2009 Final Rule, the Service and the Department of Justice have commenced BGEPA related enforcement actions, including against EWAC members.  Individual EWAC members have received letters or telephone communications from the Department of the Interior and the Department of Justice threatening enforcement actions regarding eagles at specific projects.  Some of these enforcement actions have resulted in consent decrees, final judgments, or other agreements in which EWAC members have been obligated to pay a civil or criminal penalty and seek a non-purposeful take permit under the 2009 Final Rule.  Despite the fact that certain EWAC members have engaged with the Service to seek authorization under a non-purposeful take permit, and have even gone so far as to enter into memoranda of understanding to fulfill the Preservation Standard, none of these applications or discussions has progressed even to the National Environmental Policy Act scoping process stage.

17.     As there has been no indication that the Service or the Department of Justice will stop enforcing BGEPA's take prohibition or the 2009 Final Rule, the ongoing enforcement threat to EWAC members is neither conjectural nor hypothetical.  Accordingly, as the current and future injuries noted herein are a direct result of the Service's promulgation of the 2009 Final Rule, the relief sought – an order declaring invalid the Preservation Standard and the "otherwise lawful" requirement of the 2009 Final Rule for non-purposeful take permits, enjoining enforcement of those unlawful provisions, and remanding those portions of the 2009 Final Rule

9426922

to the Service for further action consistent with BGEPA's statutory grant of authority – would redress the injuries.  EWAC and its members have no other adequate remedy at law.

18.     Defendant Sally M. Jewell is the Secretary of the Interior for the U.S. Department of the Interior and is the federal official responsible for carrying out the statutory objectives of BGEPA and has ultimate authority for promulgating regulations under BGEPA.  Secretary Jewell is sued in her official capacity.

19.     Defendant Daniel M. Ashe is the Director of the U.S. Fish and Wildlife Service and is the federal official responsible for overseeing the activities of the U.S. Fish and Wildlife Service, including its promulgation and enforcement of regulations under BGEPA.  Director Ashe is sued in his official capacity.

20.     Defendant U.S. Department of the Interior is the federal agency responsible for the management and conservation of federal lands and resources, which includes enforcing federal policies concerned with the protection of species and other natural resources.  The U.S. Department of the Interior is the federal agency bearing ultimate responsibility for the administration and enforcement of BGEPA.

21.     Defendant United States Fish and Wildlife Service is the agency within the Department of the Interior that is charged with implementing BGEPA and is responsible for promulgating and enforcing regulations pursuant to the statutory grant of authority in BGEPA. The Service is responsible for ensuring that all of the regulations it promulgates under BGEPA comply with the statutory authority granted to it and for complying with the APA when promulgating regulations.

## LEGAL BACKGROUND

22.     BGEPA was enacted in 1940 and has been revised and amended by Congress on

several occasions.  In particular, Congress has amended 16 U.S.C. § 668a on three separate

occasions – once to account for the addition of Alaska as a state, once to extend the protections

of the act to the Golden Eagle, and once to increase the criminal fines that may be assessed for a

violation of BGEPA.  None of these changes granted the Defendants additional authority to

prescribe take permit regulations beyond the authority granted in 1940.

23.     BGEPA, in its current form, prohibits the taking of Bald or Golden Eagles for any

purpose unless the taking is authorized by the Secretary of the Interior pursuant to a permitting

program and regulations promulgated by the Service under the Secretary's authority.

Specifically, BGEPA states: "Whenever, after investigation, the Secretary of the Interior shall

determine that it is compatible with the preservation of the bald eagle or the golden eagle to

permit the taking, possession, and transportation of specimens thereof for the scientific or

exhibition purposes of public museums, scientific societies, and zoological parks, or for the

religious purpose of Indian tribes, or that it is necessary to permit the taking of such eagles for

the protection of wildlife or of agricultural or other interests in any particular locality, he may

authorize the taking of such eagles pursuant to regulations which he is hereby authorized to

prescribe . . . ."  16 U.S.C. § 668a.

24.     The text of BGEPA thus authorizes the promulgation of regulations permitting

take under two scenarios: (i) if the Secretary of Interior determines "that it is compatible with the

preservation of the bald eagle or the golden eagle to permit the taking, possession, and

transportation of specimens thereof for the scientific or exhibition purposes of public museums,

scientific societies, and zoological parks, or for the religious purposes of Indian tribes", or (ii) if

9426922

the Secretary of Interior determines "that it is necessary to permit the taking of such eagles for

the protection of wildlife or of agricultural or other interests in any particular locality . . . ."  16

U.S.C. § 668a.

25.     BGEPA requires a determination that the taking of Bald or Golden Eagles is

compatible with the preservation of the species only when permitting the taking for "scientific or

exhibition purposes of public museums, scientific societies, and zoological parks, or for the

religious purposes of Indian tribes."  16 U.S.C. § 668a.  No such requirement is imposed by

BGEPA for takings in connection with agricultural or other interests in a particular locality –

rather, any taking associated with agricultural or other interests must be "necessary."  16 U.S.C.

§ 668a.  However, the 2009 Final Rule improperly grafts the Preservation Standard requirement

applicable to permits related to scientific or exhibition purposes of public museums, scientific

societies, and zoological parks, or for the religious purposes of Indian tribes, onto non-purposeful

take permits for activities related to the protection of wildlife or of agricultural or other interests

in any particular locality.

26.     Notably, while the Service cites 16 U.S.C. § 668a as the authorization for its

issuance of the 2009 Final Rule, instead of quoting 16 U.S.C. § 668a the Service provided a

partial quote and repositioned the location of the Preservation Standard requirement:  "The Eagle

Act provides that the Secretary of the Interior may authorize certain otherwise prohibited

activities through promulgation of regulations.  The Secretary is authorized to prescribe

regulations permitting the 'taking, possession, and transportation of [bald or golden eagles] . . .

for the scientific or exhibition purposes of public museums, scientific societies, and zoological

parks, or for the religious purposes of Indian tribes, or . . . for the protection of wildlife or

agricultural or other interests in any particular locality,' provided such permits are 'compatible

with the preservation of the bald eagle or the golden eagle' (16 U.S.C. § 668a)."  74 Fed. Reg.

46,836, 46,837 (Sept. 11, 2009) (codified at 50 C.F.R. pt. 22).

27.     A regulation may be challenged under the APA if the agency exceeded its

jurisdiction, committed an abuse of discretion by adopting the regulation, or if the promulgation

of the regulation is otherwise not in accordance with the law.  5 U.S.C. § 706.  An agency rule is

arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to

consider, entirely failed to consider an important aspect of the problem, offered an explanation

for its decision that runs counter to the evidence before the agency, or is so implausible that it

could not be ascribed to a difference in view or the product of agency expertise."  *Motor Vehicle*

*Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  Further, courts "may not

supply a reasoned basis for the agency's action that the agency itself has not given."  *Id.*

28.     In this case, the promulgation of the 2009 Final Rule exceeded Defendants'

statutory authority by adding that a take permit will be issued for non-purposeful take associated

with wildlife, agricultural, or other interests only if the permitted activities are "compatible with

the preservation of the Bald Eagle or the golden eagle."  74 Fed. Reg. 46,836 (Sept. 11, 2009).

This condition is not imposed by the statute.

29.     Similarly, there is no requirement in BGEPA that activities resulting in or deemed

to cause "take" of Bald or Golden Eagles be "otherwise lawful" under other Federal, state, and

local laws and regulations.  The requirement that permitted activities resulting in potential take

be "otherwise lawful" is wholly a creation of the 2009 Final Rule devoid of a basis in the

statutory language of BGEPA.  This requirement represents a sweeping new assertion of

authority by the Service to constrain takings based on federal, state, and local requirements that

9426922

may have nothing to do with preservation of the species, including, but not limited to, local tax
and zoning ordinances.

30.     Adding the requirement that the Service investigate and determine that activities
would be "otherwise lawful" where a non-purposeful take permit is sought for wildlife,
agricultural or other interests constitutes an abuse of discretion and exceeds the Defendants'
statutory authority because such an addition has no basis in BGEPA's grant of authority to the
Defendants.

## FACTUAL BACKGROUND

31.     On June 5, 2007, the Service proposed a rule establishing regulations and a take
permitting program for non-purposeful take associated with wildlife, agricultural and other
interests under BGEPA.  72 Fed. Reg. 31,141 (Jun. 5, 2007).  The proposed permitting program
was spurred by the anticipated removal of the Bald Eagle from the List of Endangered and
Threatened Species under the Endangered Species Act of 1972.  There is a separate program for
permitting take of species protected under the Endangered Species Act.

32.     As stated in the preamble to the proposed rule, the permitting program for
BGEPA would only authorize take "where it is determined to be compatible with the
preservation of bald and golden eagles and cannot practicably be avoided."  72 Fed. Reg. 31,141
(Jun. 5, 2007).  The proposed permitting program anticipated that take would have to be
"unavoidable," meaning that the proposed activity would be "necessary for the public welfare" in
order to qualify for a non-purposeful take permit.  72 Fed. Reg. 31,143 (Jun. 5, 2007).  The
preamble to the proposed rule also explained that by adding the requirement that any take be
"associated with, and not the purpose of, the activity," *id.* at 31153, the Service was requiring

that the take be "associated with, and not the purpose of an otherwise lawful activity." *Id*. at

31143.

33.     During the initial 90-day comment period on the proposed permitting program,

the Service received 21,500 comments, which ultimately lead the Service to release a draft

environmental assessment of the action on August 14, 2008.  73 Fed. Reg. 47,574 (Aug. 14,

2008).  EWAC members submitted comments on the proposed rule.  Following the 30-day

comment period on the draft environmental assessment for the proposed rule, as modified in the

August 14, 2008 Federal Register notice, the Service published its Final Rule on September 11,

2009.

34.     Included in the changes embodied in the 2009 Final Rule is a modification of the

Service's interpretation of the so-called Preservation Standard to mean that non-purposeful take

permits could be granted to "actions that are consistent with the goal of stable or increasing

breeding populations" of Bald and Golden Eagles.  74 Fed. Reg. 46,836 (Sept. 11, 2009).

Several comments discussed in the 2009 Final Rule, including those from EWAC members,

noted that the Service cited no authority under BGEPA to impose the Preservation Standard

where neither a tribal, scientific, nor cultural permit for take was sought.  The Service responded

merely that it found the Preservation Standard to be reasonable.  74 Fed. Reg. 46,852 (Sept. 11,

2009).

35.     The 2009 Final Rule also stated in response to a comment that while applicants

for non-purposeful take permits would be required to certify only that the proposed activity

complies with all federal, state, and tribal laws concerning take of eagles and authorization of the

activity, "the Federal authorization is not valid unless the activity complies with *all other*

*applicable laws*, including State *and local* laws."  74 Fed. Reg. 46,857 (Sept. 11, 2009) (emphasis added).

36.     Following the publication of the 2009 Final Rule, the Service began developing guidance documents to assist applicants for non-purposeful take permits pursuant to BGEPA and the 2009 Final Rule.  The comments included that the Service's non-purposeful take permitting program under the 2009 Final Rule impermissibly transposed the Preservation Standard from cultural and tribal take permits to apply to all permits for non-purposeful take, and improperly added the "otherwise lawful" standard in the absence of any statutory authority to do so.

37.     Despite these comments, the Service continues to inappropriately apply the Preservation Standard to permits for agricultural and other interests and to impose the "otherwise lawful activity" requirement.

38.     While EWAC and its members have met with the Service in an attempt to clarify the provisions of the 2009 Final Rule and to resolve the Rule's inconsistencies with BGEPA's statutory language, the Service has indicated that it does not intend to stop enforcing BGEPA's prohibition on unpermitted take or the 2009 Final Rule or to propose amendments to the 2009 Final Rule that would remove the unlawful Preservation Standard and "otherwise lawful" provision as applied to non-purposeful takes.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

**(Violation of APA and BGEPA: Failure to Conform the 2009 Final Rule to the Statutory Grant of Authority Under BGEPA)**

39.     EWAC hereby incorporates, reasserts, and realleges all of the allegations contained in paragraphs 1 through 38 as if fully set forth herein.

14

40.     The 2009 Final Rule imposes a blanket requirement that *all* permits for the non-purposeful taking of Bald or Golden Eagles be granted only if such permits are "compatible with the preservation of the bald eagle or golden eagle."  74 Fed. Reg. 46,836, 46,837 (Sept. 11, 2009).

41.     Because neither the express statutory language, legislative history, nor any canon of statutory interpretation allows for this requirement to apply to authorization of non-purposeful take associated with activities related to the protection of wildlife or of agricultural or other interests in any particular locality, the Service's inclusion of the Preservation Standard for such activities in the 2009 Final Rule constitutes the promulgation of a regulation in excess of statutory authority and an abuse of discretion, as well as an arbitrary and capricious act.  5 U.S.C. §§ 706(2)(A), (C).

42.     In light of the foregoing, the Service violated the APA and BGEPA.

## SECOND CLAIM FOR RELIEF

**(Violation of APA and BGEPA:  Failure to Conform the "Otherwise Lawful" Requirement to the Statutory Grant of Authority Under BGEPA)**

43.     Plaintiff EWAC hereby incorporates, reasserts, and realleges all of the allegations contained in paragraphs 1 through 38 as if fully set forth herein.

44.     The plain language of BGEPA allows for the take of Bald or Golden Eagles pursuant to a proper take permit obtained from the Secretary of Interior.  Unlike other environmental statutes, such as section 10 of the Endangered Species Act, BGEPA contains no requirement that the activity causing take be otherwise lawful.

45.     The 2009 Final Rule imposes a new requirement for the issuance of non-purposeful take permits under BGEPA, requiring that all permits for non-purposeful take of

9426922

eagles comply "with all Federal, tribal, State, and local laws and regulations applicable to take of eagles." 50 C.F.R. § 22.26(c)(10).

46.     The Service's Eagle Conservation Plan Guidance goes a step further than the 2009 Final Rule, suggesting that the requirement that non-purposeful take be incidental to "otherwise lawful activity" means that the activity must be undertaken in accordance with all laws on any subject. U.S. Fish and Wildlife Service, *Eagle Conservation Plan Guidance, Module 1 – Land-based Wind Energy, Version 2*, at iii, 4, 6 (Apr. 2013).

47.     Nothing in the legislative history or the statutory language of BGEPA indicates an intent to include the requirement that non-purposeful take be permitted only where associated with "otherwise lawful activity" in compliance with all "Federal, tribal, State, and local laws and regulations."

48.     The 2009 Final Rule's establishment and imposition of an "otherwise lawful activity" permitting standard constitutes rulemaking in excess of statutory authority and an abuse of discretion, as well as an arbitrary and capricious act. 5 U.S.C. §§ 706(2)(A), (C).

49.     In light of the foregoing, the Service violated the APA and BGEPA.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff EWAC respectfully requests that the Court:

(1)     Adjudge and declare that the Preservation Standard and "otherwise lawful" portions of the 2009 Final Rule for non-purposeful take permits are invalid under the APA as they exceed the statutory authority and/or are an abuse of discretion and/or are arbitrary and capricious;

(2)     Enjoin the consideration and enforcement of the Preservation Standard and "otherwise lawful" requirement as embodied in the 2009 Final Rule for the issuance of BGEPA

16

take permits for the protection of wildlife or of agricultural or other interest in any particular locality;

(3)      Remand the Preservation Standard and "otherwise lawful" components of the 2009 Final Rule with instructions for the Defendants to undertake rulemaking to create a take permitting program consistent with the authority granted under BGEPA;

(4)      Retain jurisdiction of this matter until Defendants have fulfilled their legal and Court-ordered obligations as set forth in this complaint;

(5)      Award EWAC its reasonable fees, expenses, costs, and disbursements, including attorneys' fees associated with this litigation as provided by the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(6)      Grant such other and further relief as the Court deems just and proper.


Dated:  September 10, 2015                    Respectfully submitted,



                                              */s/ Steven P. Quarles*
                                              Steven P. Quarles, DC Bar No. 351668
                                              Paul S. Weiland, CA Bar No. 237058
                                              Benjamin Z. Rubin, CA Bar No. 249630
                                              Stephanie N. Clark, CA Bar No. 299657
                                              Nossaman LLP
                                              18101 Von Karman Avenue, Suite 1800
                                              Irvine, CA 92612
                                              Telephone:  949.833.7800
                                              Facsimile:   949.833.7878

17

9426922